# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID O'HARA,                  )
                                      )
              Plaintiff,       )
                                        )
              v.               )      Civil Action No. 08-1393
                                        )      Judge Nora Barry Fischer
JOREL HANLEY, as an individual,    )
CRAIG MILLER, as an individual,     )
YVONNE SUPPOK, as an individual,  )
MICHAEL SCHLESINGER, as an individual,  )
                                        )
             Defendants.    )
                                        )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff David O'Hara ("Plaintiff") commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Jorel Hanley ("Hanley"), Craig Miller ("Miller"), Yvonne Suppok ("Suppok"), and Michael Schlesinger ("Schlesinger")[1] seeking redress for claims of unlawful seizure and arrest (Count I) and malicious prosecution (Count II) under the Fourth Amendment; unlawful search and seizure, due process and equal protection violations of the Pennsylvania Constitution (Count III); abuse of process (Count IV); wrongful use of civil process (Count V); and intentional infliction of emotional distress under Pennsylvania law (Count VI). (Docket No. 16). Currently pending before the Court is Defendants Suppok and Schlesinger's (collectively the "CYS Defendants") Motion to Dismiss Plaintiff's Amended Complaint. (Docket No. 18). For the following reasons, the Court GRANTS, in part, and DENIES, in part the CYS Defendants' Motion.

---

[1] Plaintiff originally also filed suit against Defendants Cumberland Township, Marjorie Fox, Linda Chambers and Greene County. (Docket No. 1). These Defendants, however, were terminated on March 10, 2009 by Order of this Court as they were not named in Plaintiff's Amended Complaint. (Docket No. 16).

## II.    FACTUAL BACKGROUND

Plaintiff is currently a resident of Carmichaels, Pennsylvania. (Docket No. 1 at ¶ 4). Defendant Hanley, an employee of the Cumberland Township police, was serving as a patrolman during the actions complained of by Plaintiff while Defendant Miller, also an employee of the Cumberland Township police, was serving as a sergeant. (*Id.* at ¶¶ 5, 6). Defendant Suppok is a caseworker for Greene County Children and Youth Services (hereinafter "CYS"). (*Id.* at ¶ 7). Defendant Schlesinger is a supervisor for Greene County CYS and serves as the direct supervisor of Defendant Suppok. (*Id.* at ¶ 8). Plaintiff contends that at all time relevant to his claims, Schlesinger had the duty to supervise Suppok and knew or should have known that Suppok was engaged in improper activities. (*Id.* at ¶ 29).

On September 8, 2006, Sara Brown, a minor child, and her paternal grandmother, Bobbi Brown, made allegations to CYS claiming that Sara and another minor[2] were sexually assaulted by Plaintiff on several occasions. (*Id.* at ¶ 9). On September 29, 2006, Sara and Bobbi Brown made similar claims against Sara's natural mother, Chrystal Jacobs. (*Id.* at ¶ 10). On October 2, 2006, Sara and Bobbi Brown made further allegations that Plaintiff sexually assaulted the other minor child on a second occasion. (*Id.* at ¶ 11). Upon receipt of this information, Defendants Suppok and Schlesinger initiated civil proceedings against Plaintiff in the nature of a CYS investigation.(*Id.* at ¶ 12).   Plaintiff claims that this investigation was undertaken without probable cause as these Defendants knew the sexual misconduct claims were false. (*Id.*).

Thereafter, on October 13, 2006, Sara Brown informed Defendants Hanley and Miller of the

---

[2]

In the interest of privacy, Plaintiff has not identified this minor child by name and avers that Defendants know the identity of this child. (Docket No. 16 at 3, note 1).

claims made against Plaintiff. (*Id.* at ¶ 13). That same day, Defendants Hanley and Miller met with Plaintiff. (*Id.*). Defendant Miller indicated that he would be the officer in charge on the case and would be supervising Officer Hanley. (*Id.* at ¶ 13). During this meeting, Plaintiff was questioned regarding the allegations made by Sara and Bobbi Brown. (*Id.* at ¶ 13). Defendant Suppok was present during this questioning. (*Id.*). Plaintiff claims that he provided the following information during this questioning: (1) Ms. Brown had brought unfounded allegations of sexual assault on numerous prior occasions against various individuals, none of which were found to be credible; (2) Ms. Brown's grandmother, Bobbi, had a clear motive to implicate Plaintiff and others in claims of sexual assault in order to further her goal of obtaining full legal custody of Sara; (3) the allegations made by Sara Brown were physically impossible; (4) the other child was prepared to (and later did) deny the claims made against Plaintiff by Sara Brown, including the claims of sexual assault on Sara and the other child; and (5) other facts, which Plaintiff claims cast doubt on the credibility of Sara and Bobbi Brown's claims against Plaintiff. (*Id.* at ¶ 13).

While the criminal and civil investigations were ongoing in October of 2006, Plaintiff claims that Defendant Suppok apologized to him and admitted that she knew that the accusations against Plaintiff were false. (*Id.* at ¶ 27). Thereafter, on October 16, 2006, Plaintiff claims that he was informed by Greene County CYS that the first set of allegations of sexual abuse as to the other minor child were unfounded. (*Id.* at ¶ 14). On November 3, 2006, Plaintiff received notification from Defendant Suppok on behalf of Greene County CYS that the result of her investigation was that Plaintiff's status was "Indicated Sexual Perpetrator." (*Id.* at ¶ 15). That same day, Plaintiff received notification from Greene County CYS that the status of that investigation was also "pending criminal action." (*Id.* at ¶ 15). This action, Plaintiff avers, was taken despite the fact that Suppok knew or

should have known that Plaintiff was not guilty of the Browns' accusations. (*Id.*).

On November 6, 2006, Plaintiff was informed by Greene County CYS that the second set of allegations of sexual abuse made against him relating to the other minor child were unfounded. (*Id.* at ¶ 16). On November 20, 2006, Sara's mother Chrystal Jacobs was informed by Greene County CYS that the allegations of sexual abuse that were made against her were also unfounded. (*Id.* at ¶ 17). Plaintiff claims that Suppok was aware of these facts. (*Id.*). Thereafter, on December 28, 2006, Defendant Suppok and a Cumberland Township police officer entered into the home of Plaintiff and took custody of two unidentified minor children who were living in Plaintiff's home. (*Id.* at ¶ 18).

Plaintiff voluntarily turned himself into Cumberland Township police and was arrested by Defendant Hanley on January 4, 2007. (*Id.* at ¶ 19). He was charged with two counts of rape, one count of aggravated indecent assault, two counts of sexual assault, two counts of statutory sexual misconduct, four counts of indecent assault, three counts of indecent exposure and four counts of corruption of minors. (*Id.* at ¶ 19). Plaintiff avers that the Defendant police officers arrested and charged him without probable cause because they "were in possession of knowledge regarding previous false claims of alleged victims, together with other facts which made it unreasonable for these Defendants to believe" that Plaintiff has assaulted a child. (*Id.* at ¶ 20). Plaintiff claims that Defendants acted maliciously and for purposes other than bringing Plaintiff to justice. (*Id.* at ¶ 21).

As a result of his arrest, Plaintiff was incarcerated, posted a $25,000 bond and was given travel restrictions during the pendency of the criminal proceedings. (*Id.* at ¶ 22). Plaintiff attended a preliminary bond hearing, preliminary hearing, two arraignments, an omnibus pretrial hearing, pretrial conference, three plea hearings and two jury selections. (*Id.* at ¶ 23). At various times

through the criminal proceeding, Plaintiff contends that Defendants gave false testimony related to the charges against him. (*Id.*). At various times throughout this criminal case, he asserts that Sara and Bobbi Brown made false accusations of sexual abuse against seven individuals "involving eleven different alleged incidents." (*Id.* at ¶ 24 ).

On January 22, 2008, a jury trial was held in the Greene County Court of Common Pleas on the criminal charges contained in an 18-count criminal information against Plaintiff. (*Id.* at ¶ 25). At the beginning of the criminal trial, Plaintiff claims that Defendant Hanley apologized to him and said that he knew that the criminal charges against Plaintiff were false and baseless. (*Id.* at ¶ 26). Plaintiff also maintains that Defendant Suppok apologized to him in October of 2006 "admitting she believed that the accusations against the Plaintiff were false." (*Id.* at ¶ 27). However, Suppok still took action to assist in the criminal prosecution of Plaintiff. (*Id.*). The state court judge directed a verdict in favor of Plaintiff on 14 of the 18 criminal counts. (*Id.* at ¶ 25). The jury acquitted the Plaintiff on the remaining four counts. (*Id.* at ¶ 25). Thereafter, a CYS administrative child abuse expunction hearing was held on May 23, 2008.[3] (*Id.* at ¶¶ 22, 28).

The gravamen of Plaintiff's claims is that Defendants acted in concert with each other to bring criminal charges against Plaintiff notwithstanding the fact that they knew or should have known that the accusations of sexual abuse against him were false. (*Id.* at ¶¶ 27-28).

## III.   PROCEDURAL HISTORY

On October 3, 2008, Plaintiff filed his Complaint against Defendants Hanley, Miller, Cumberland Township, Suppok, Marjorie Fox, Linda Chambers, Schlesinger, and Greene County. (Docket No. 1). Defendants Hanley, Miller, and Cumberland Township moved to dismiss Plaintiff's

---

[3]

Although Plaintiff avers that an expungement hearing was held, he has not pled the outcome of that hearing.

Complaint on December 26, 2008. (Docket Nos. 5 and 6). Defendants Greene County, Suppok, Marjorie Fox, Linda Chambers, and Schlesinger similarly moved to dismiss the Complaint on January 12, 2009. (Docket Nos. 8 and 9). Plaintiff filed his Responses in opposition on March 9, 2009[4] and simultaneously filed his Amended Complaint. (Docket Nos. 14, 15, and 16, respectively). Accordingly, the Court terminated Defendants' motions to dismiss as moot on March 10, 2009. (Text Entry Order Mar. 10, 2009).

In his Amended Complaint, Plaintiff withdrew his procedural due process and substantive due process claims under the Fourteenth Amendment, claims against Cumberland Township, claims against the police officers in their official capacities, invasion of privacy claims, all claims against Greene County, and all claims against Defendants Fox and Chambers, the prosecutors in his underlying state court criminal case. (Docket No. 16). Defendants Hanley and Miller filed their Answer and Affirmative Defenses to Plaintiff's Amended Complaint on March 23, 2009. (Docket No. 17). That same day, Defendants Suppok and Schlesinger filed their Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support. (Docket Nos. 18 and 19). Plaintiff filed his Brief in Opposition on May 18, 2009.[5] (Docket No. 28). As the motion is fully briefed, it is now ripe for disposition.

## IV.    LEGAL STANDARD

A valid complaint requires only "a short and plain statement of the claim showing that the

---

[4]

Plaintiff was granted two extensions of time to file his response to the motions to dismiss, extending the deadline for the filing of same from January 22, 2009 to March 6, 2009. (Docket Nos. 10 - 13).

[5]

Plaintiff's response was originally due on April 13, 2009, however, the Court granted Plaintiff three extensions of time, making his response due on May 18, 2009. (Docket Nos. 20-23, 25, 26). The Court thereafter convened a case management conference with counsel for the parties on June 8, 2009 and set down case management deadlines. (Docket Nos. 32, 33, and 34).

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008); and *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008). The determination of whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

## V.    ANALYSIS

Plaintiff's Amended Complaint (Docket No. 16) alleges various claims against the CYS Defendants pursuant to  42 U.S.C. § 1983, including claims under the Fourth and Fourteenth Amendments of the United States Constitution and claims under the Pennsylvania Constitution.  He has also brought claims against all Defendants for abuse of process, wrongful use of civil process,

and intentional infliction of emotional distress under Pennsylvania law. The Court will address the CYS Defendants' Motion (Docket No. 18) as to each challenged claim, in turn.

### A.    Section 1983 Claims

Section 1983 provides a remedy for any person who, under color of law, is deprived of constitutional rights. 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Robb v. City of Philadelphia*, 733 F.2d 286, 290-91 (3d Cir. 1984)(citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)); *see also Carter v. City of Philadelphia*, 989 F.2d 117, 119 (1993).

In his Amended Complaint, Plaintiff alleges three separate section 1983 violations: (1) violations of the Fourth Amendment's protections against unlawful search and seizure; (2) malicious prosecution in violation of the Fourth Amendment; and (3) violations of his equal protection rights. (Docket No. 18 at 9, 12). The Court now addresses the parties' arguments as to these separate claims under section 1983, below.

#### 1.    Plaintiff's Fourth Amendment Claims for Unlawful Search and Seizure

Defendants Suppok and Schlesinger argue that Plaintiff has failed to allege in what manner their actions deprived him of his Fourteenth Amendment rights. (Docket No. 19 at 6). Plaintiff, however, has admittedly withdrawn his Fourteenth Amendment procedural due process claims and amended his substantive due process claims to false arrest/false imprisonment claims under the Fourth Amendment when he filed his Amended Complaint. (Docket No. 27 at 12). The CYS Defendants argue, relative to both Plaintiff's false arrest/false imprisonment claims and his malicious

8

prosecution claim, that they are improper defendants. (Docket No. 19). They further argue that Plaintiff has failed to allege how either Suppok or Schlesinger knew that Bobbi and Sara Brown's claims were false. (Docket No. 19 at 7).

Plaintiff alleges that his arrest was the direct and proximate result of the actions of all Defendants and that his arrest and seizure were without probable cause and without prior judicial approval. (Docket No. 16 at ¶ 32). A claim for false arrest/false imprisonment under §1983 is grounded in the Fourth Amendment guarantee against unreasonable seizure. *Groman v. Township of Manalapan*, 47 F.3d. 628, 636 (3d Cir. 1995). To maintain a cause of action for false arrest, a plaintiff must allege that the arresting officer lacked probable cause to make that arrest. *Garcia v. County of Bucks, Pa.*, 155 F.Supp.2d. 259, 265 (E.D.Pa. 2001). "Probable cause exists when the totality of the facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed the offense." *Id.*

The CYS Defendants argue that Plaintiff has failed to state a claim for false arrest because Plaintiff does not specifically state how the CYS Defendants knew that the allegations against Plaintiff were false. (Docket No. 19 at 5-7). However, construing the allegations in the amended complaint in a light most favorable to Plaintiff, it is clear that although Plaintiff does not allege how the CYS Defendants knew the allegations to be false, he does claim that they knew them to be false and verbally acknowledged the same to him. (Docket No. 16 at ¶¶ 26, 27, 29). Moreover, Suppok and Schlesinger have not cited any case law indicating a need for further specificity at this stage of the litigation.

The CYS Defendants next argue that they are improper defendants for a false arrest claim because they lack "powers of arrest." (Docket No. 9 at 12). Plaintiff counters that despite not having

arrest powers, the CYS Defendants investigated Plaintiff with knowledge that the claims against him were false as well as provided false information that lead directly to his arrest and incarceration. (Docket No. 27 at 13). While there is no precedent in the United States Court of Appeals for the Third Circuit on this issue, district courts in other jurisdictions have found that false arrest/false imprisonment claims can be brought against an individual other than the arresting officer when that person "instigates" the arrest. *See Lopez v. City of New York*, 901 F.Supp. 684 (S.D.N.Y. 1995)(false arrest claim proper against the chairperson of a community board who the plaintiff claimed directed the arresting officer to make the arrest.); *Fowler v. Robinson*, Civ. A. No. 94-936, 1996 WL 67994 (N.D.N.Y. Feb. 15, 1996)(a false arrest claim was proper against two social workers who gave statements to the police in a child abuse case when one of the workers insisted that the officer arrest the plaintiff in the case); *Shattuck v. Town of Stratford*, 233 F.Supp.2d 301, 313-314 (D.Conn. 2002)(section 1983 false arrest claim proper against a tax collector when that individual instigated the plaintiff's arrest).

Plaintiff claims that the investigation, arrest, and his subsequent prosecution for sexual misconduct charges were without probable cause. (Docket No. 16 at ¶¶ 34, 37). In support of these claims, Plaintiff avers that the CYS Defendants and the police officers knew that the investigations lacked probable cause because they were aware that Sara and Bobbi Brown's claims of sexual abuse were false and of issues relating to the Browns' credibility. (*Id.* at ¶ 12). Plaintiff has also pled that Defendants Suppok and Hanley apologized to him in acknowledgment of their falsity. (*Id.* at ¶¶ 27, 29). He indicated that Defendant Suppok knew of the falsity of the charges against him around the same time that she was present at the initial meeting between Plaintiff and police. (*Id.* at ¶¶ 13, 27). Finally, Plaintiff claims that the CYS investigations into his behavior and his CYS status of

"indicated sexual perpetrator" were the direct and proximate cause of criminal charges being brought against him that lead to his arrest and detainment by Defendants Hanley and Miller. (*Id.* at ¶ 12, 13).

Viewed in the light most favorable to Plaintiff, these factual allegations can support a finding that the CYS Defendants were instrumental in instigating the bringing of criminal charges, investigation, and the arrest of Plaintiff. Therefore, Plaintiff has sufficiently pled a claim for false imprisonment/false arrest pursuant to the Fourth Amendment against Defendants Suppok and Schlesinger to permit these allegations to be probed in discovery.

### 2. Plaintiff's Claims for Malicious Prosecution

In support of their argument that Plaintiff has failed to state a claim for malicious prosecution, the CYS Defendants contend that CYS and its individual employees had no involvement, other than testifying, in the criminal proceedings against Plaintiff and, therefore, they are improper defendants in a malicious prosecution claim. (Docket No. 19 at 12). CYS Defendants further contend, similar to their earlier argument, that Plaintiff has failed to sufficiently allege how the CYS Defendants knew Bobbi and Sara Browns' claims to be false. *(Id.* at 11).

To state a claim for Fourth Amendment malicious prosecution in a §1983 action, a plaintiff must claim that "(1) the defendant initiated a criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Defendants cite to no case law in support of their argument that CYS Defendants were not proper Defendants in this instance. They essentially assert that employees of CYS do not prosecute

crimes and therefore could not initiate a criminal proceeding. Although prosecutors are tasked with initiating criminal proceedings, police officers are often named in malicious prosecution claims:

> Generally, it is the prosecutor, not the police officer, who is responsible for initiating a proceeding against a defendant. See *Albright,* 510 U.S. at 279 n. 5, 114 S.Ct. 807 (Ginsburg, J. concurring). An officer may, however, be considered to have initiated a criminal proceeding if he or she "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Merrero v. Micewski,* No. Civ. A. 96-8534, 1998 WL 414724, at *6 (E.D.Pa. July 22, 1998) (citations omitted); *accord Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir.1996).

*Gatter v. Zappile*, 67 F.Supp.2d 515, 521 (E.D.Pa. 1999); *see also Telepo v. Palmer Tp.,* 40 F.Supp.2d 596, 610 (E.D.Pa. 1999)("A person can be liable for malicious prosecution if he fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.").

While Greene County CYS and its employees are not a prosecutorial or police entity, its employees still have the ability to knowingly provide false information to the police and prosecutors. In *Shattuck v. Town of Stratford*, 233 F.Supp.2d 301, 313-314 (D.Conn. 2002), a tax collector was found to be a proper defendant in a malicious prosecution claim even though she did not request the arrest warrants when "the plaintiff could show that she had initiated or instigated the proceedings against them by contacting the police and then encouraging their prosecution." *Id.* In the instant case, Plaintiff alleges that the CYS Defendants participated in the initiation and prosecution of civil and criminal proceedings against him and that the proceedings ended in Plaintiff's favor. (Docket No. 16, ¶ 44). CYS Defendants argued that the CYS employees "refer the case to the county's prosecutor for a criminal investigation." (Docket No. 19 at 12). To that end, Plaintiff avers that Defendant

Suppok was present during part of the criminal investigation. (Docket No. 16 at ¶ 12). Plaintiff further alleges that these proceedings were brought without probable cause because all of the Defendants knew the sexual abuse claims underlying the criminal charges were false and that the CYS Defendants knew them to be false before any criminal charges were filed. (Docket No. 16 at ¶ 44). Finally, Plaintiff has pled that the charges were brought maliciously, and subjected Plaintiff to arrest, incarceration, paying bond, and travel restrictions. (*Id.*).

Based on these allegations as pled by Plaintiff, the Court does not find merit in the CYS Defendants' arguments that the they are improper defendants and that Plaintiff has failed to state a claim for malicious prosecution. Additionally, in bringing this claim, Plaintiff is not required to specifically allege how the Defendants knew that the claims of child abuse were false. Therefore, the Court finds that Plaintiff has sufficiently stated a claim against CYS Defendants for malicious prosecution under §1983 and the Fourth Amendment so that this claim may proceed through discovery.

3.      Plaintiff's Equal Protection Claim

Within Count I of the Amended Complaint, Plaintiff also alleges violations of his equal protection right under the  "class of one" theory. (Docket No. 16 at ¶¶ 31-41). Suppok and Schlesinger argue that Plaintiff has failed to properly plead a "class of one" equal protection claim pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment. (Docket No. 19 at 10-11). Specifically, Defendants contend that Plaintiff has failed to allege how he was treated differently than any other individual accused of sexual misconduct with a minor child. (*Id.* at 10). Plaintiff does not set forth how others who are arrested for similar offenses in Greene County are treated differently than Plaintiff. (*Id.*).   In response, Plaintiff argues that the allegations as set forth in his Amended

Complaint comply with the Supreme Court's pleading requirements as spelled out in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). (Docket No. 14 at 11).

In *Olech*, the Supreme Court held that a successful equal protection claim may be brought by a "class of one" where that individual can allege that he was treated differently than those similarly situated to him rather than asserting deprivation of a fundamental right or discrimination based on membership in a large class, such as one defined by gender. *Olech*, 528 U.S. at 564. To state an equal protection claim under a "class of one" theory, a plaintiff must allege the following elements: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). In the instant case, Plaintiff alleges that the CYS Defendants "[i]n taking the actions against Plaintiff...with respect to the investigation, arrest and prosecution of the Plaintiff...treated [him] differently than others similarly situated to him." (Docket No. 16 at ¶ 39). Defendants argue that to be adequately pled, the first element requires specific allegations of how Plaintiff was treated differently than those similarly situated. (Docket No. 19 at 10-11).

Specificity, however, is not required in this instance. In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the Third Circuit Court of Appeals adopted the reasoning of *Demuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003) when addressing the pleading requirements of the first element of a "class of one" equal protection claim. *See Phillips*, 515 F.3d at 244. In *Demuria*, the district court dismissed plaintiff's "class of one" equal protection claim citing insufficient specificity in identifying others similarly situated to Plaintiff who were treated differently and how they were treated differently. The Second Circuit Court of Appeals overturned the decision of the district court

stating that specificity in identifying actual instances where others have been treated differently was not required. *Demuria*, 328 F.3d at 707. In *Phillips*, the Court of Appeals interpreted *Demuria* and the pleading requirements of *Hill* to require a plaintiff to allege that he had been treated differently from those similarly situated, but that the requirement did not require specificity in that pleading. *Phillips*, 515 F.3d at 244-45. The Court noted that Supreme Court precedent did not " establish a requirement that a plaintiff identify in the complaint specific instances where others have been treated differently for the purposes of equal protection." *Id.* at 245.

Plaintiff has alleged that he was subject to investigation, civil and criminal proceedings, arrest, incarceration, and the seizure of minor children from his home in violation of his Fourth Amendment Rights. (Docket No. 16, *passim*). Additionally, he alleges that these actions were taken under the power and pretense of state law pursuant to investigations and statements made by the CYS Defendants. (Docket No. 16 at ¶ 35). He further alleges that these violations caused him to be treated differently from those similarly situated to himself, that the behavior was done intentionally with full knowledge of the falsity of the allegations, and that there was no rationale basis for the behavior. (*Id.* at ¶ 39).

Upon review of these allegations, the Court finds that Plaintiff has sufficiently pled a "class of one" equal protection claim pursuant to §1983 as he has set forth factual allegations for each of the necessary elements to plead such claim pursuant to *Hill*.

### B.     Plaintiff's Claims under the Pennsylvania Constitution

Defendants argue that Plaintiff's claims for violations of the Pennsylvania Constitution as contained in Count III of the Amended Complaint must be dismissed because there is no statutory authority or case law authorizing a private cause of action for money damages resulting from an

alleged violation of the Pennsylvania Constitution. (Docket No. 19 at 10-11). In response, Plaintiff

states:

> Because the Third Circuit has not ruled upon the issue of whether damages are available under the [sic] Pennsylvania law for the violation of Plaintiff's rights under the Pennsylvania Constitution, Plaintiff takes no position on Defendants' motion for dismissal of Count III. Plaintiff respectfully reserves the right to amend his position to this issue in the event that the Third Circuit, the United States Supreme Court and/or the Pennsylvania Supreme Court make a definitive ruling on this issue.

(Docket No. 14 at 5). In sum, Plaintiff does not argue that Pennsylvania jurisprudence, in its current

state, allows him to bring a claim for money damages for his state constitutional claims.

Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides

a cause of action for damages because of a federal constitutional violation. Moreover, the question

of whether the Pennsylvania Constitution provides a cause of action for damages remains

unanswered. *Underwood v. Beaver Cnty. C.Y.S.*, Civ. A. No. 03-1475, 2005 U.S. Dist. LEXIS

23012, at *7 (W.D. Pa. Oct. 7, 2005). Nevertheless, a majority of other district courts in this circuit

that have decided the issue have concluded that money damages are not available for claims under

the Pennsylvania Constitution. *See Ryan v. General Machine Prods.*, 227 F. Supp.2d 585, 595 (E.D.

Pa. 2003)(stating that federal courts in the Court of Appeals for the Third Circuit have concluded

that there is no right to money damages under the Pennsylvania Constitution); *see also Douris v.

Schweiker*, 229 F.Supp.2d 391, 405 (E.D. Pa. 2002); *Lees v. West Greene Sch. Dist.*, 632 F.Supp.

1327, 1335 (W.D. Pa. 1986).  Although monetary relief is unavailable, "other remedies, such as

declaratory or injunctive relief...are ...remedies under the Pennsylvania Constitution." *Jones v. City

of Philadelphia*, 890 A.2d 1188, 1215-16 (Pa. Commw. Ct. 2006) (discussing the lack of a cause of

action for damages under the Pennsylvania Constitution and declining, "without benefit of legislative action," to create such a cause of action.).

Here, Plaintiff has not made a claim for injunctive or declaratory relief. Rather, Plaintiff seeks recovery for his claims under the Pennsylvania Constitution in the form of monetary relief, only. (Docket No. 16 at 17). Therefore, as no such cause of action presently exists for violations of an individual's rights under the Pennsylvania Constitution, *Lees*, 632 F.Supp. at 1335, Plaintiff's claim in Count III of the Amended Complaint fails as a matter of law and is hereby dismissed with prejudice.

### C. Plaintiff's Tort Claims

Plaintiff asserts three claims under Pennsylvania tort law directed at Defendants Suppok and Schlesinger: abuse of process at Count IV; wrongful use of civil process at Count V; and intentional infliction of emotional distress at Count VI. The Court will first address Suppok and Schlesinger's arguments as to Plaintiff's claims for abuse of process and malicious use of civil process as their arguments as to both claims are based on the premise that these claims fail because they did not initiate or pursue a civil action against Plaintiff. (Docket No. 19 at 16-17).

### 1. Abuse of Process and Malicious Use of Civil Proceedings

The CYS Defendants argue that because a CYS employee cannot institute a criminal action and because no civil lawsuit was involved here, Plaintiff's claims for abuse of process and malicious use of civil proceedings must be dismissed. (Docket No. 19 at 16-17). To that end, they contend that once a CYS employee receives information about potential abuse and conducts an investigation, he or she is only tasked with deciding whether such information is founded. (*Id.*). Once this determination is made, the CYS Defendants, regardless of the outcome the investigation, refers the

same to the district attorney for further disposition. (*Id.*). The CYS Defendants never instituted any sort of civil proceeding against Plaintiff nor were they involved in any such proceeding, therefore, they argue that these claims must be dismissed. (Docket No. 19 at 16-17).

Plaintiff argues in response that the CYS investigation classifies as a "civil action" or "civil proceeding" for purposes of his claims for wrongful use of civil process and abuse of process. (Docket No. 15 at 4-5). To that end, Plaintiff states that Pennsylvania jurisprudence does not contain a limitation on the definition of "civil process" as suggested by these Defendants. (*Id.*). The CYS investigation, Plaintiff maintains, led to Plaintiff being charged with crimes for which he was tried. (*Id.* at 5). Because those charges concluded in Plaintiff's favor and the CYS investigation was not based on probable cause, he contends that Suppok and Schlesinger acted wrongfully and are liable for these claims. (*Id.*).

Under 42 Pa.C.S. §§ 8351-8355, also known as the Dragonetti Act, a party may seek redress for harm caused by another's malicious use of civil proceedings. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). The Act also covers a claim for abuse of process, commonly confused with malicious prosecution, which is separate and distinct in that it provides relief for the use of a legal process to accomplish a purpose for which it is not intended. *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998) (quotation omitted). Although these claims have similar elements, they deal with different elements of a proceeding. "Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued."*McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)(citing *Publix Drug Company v. Breyer Ice Cream Co.*, 347 Pa. 346, 349-50 (Pa. 1947)).

"The tort of 'abuse of process' is defined as the use of a legal process against another

'primarily to accomplish a purpose for which it is not designed." *Rosen v. Am. Bank of Rolla*, 42 Pa Super. 376, 627 A.2d 190, 192 (Pa. Super.Ct. 1993) (quoting RESTATEMENT (SECOND) OF TORTS §682); *see also McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)(citations omitted). The term "process" is defined as a "document evidencing a command of a court or of a district justice." 42. Pa. C.S. §102 (2004). Pennsylvania law further interprets the term "process" to include all of the procedures incident to the litigation process. *See Pellegrino Foods Prods Co. v. City of Warren*, 136 F.Supp.2d 391, 407 (W.D. Pa. 2000)(citing *Rosen*, 627 A.2d at 192).

As a basis for his abuse of process claim, Plaintiff solely relies on the CYS investigation which Suppok and Schlesinger allegedly conducted in order to bring false charges of child sexual abuse. (Docket No. 16 at 17; Docket No. 15 at 4). Specifically, Plaintiff avers that "the civil proceedings undertaken and approved" by the CYS Defendants were undertaken without probable cause and for a purpose not contemplated by the rules governing these Defendants. (Docket No. 16 at 17, ¶ 56). Plaintiff has not claimed that the CYS Defendants initiated a child abuse proceeding or that the CYS initiated any sort of legal process against him by way of a document seeking an order of court. Plaintiff argues, however, that this Court should broadly interpret the term "process" to include a CYS investigation into complaints of abuse. (Docket No. 15 at 4).

Without commenting on the merit of Plaintiff's claim that the CYS employees knew the accusations were false, the Court is not persuaded that Plaintiff has sufficiently pled a claim for abuse of process. The mere investigation of the claims asserted against Plaintiff by the CYS

Defendants is insufficient to trigger "process" for purpose of an abuse of process claim. *See Klein v. County of Bucks*, 275 F.Supp.2d 628, 635 (E.D. Pa. 2003)(an attempt to institute criminal proceedings and disciplinary hearings are not considered "process" or "proceedings, either civil or criminal."). Plaintiff also has not alleged the CYS Defendants instituted a civil suit against him or sought an order of court. Rather, he bases his claim on the initiation of and the investigation by the CYS Defendants. (Docket No. 16 at 17, ¶ 56). However, an investigative process, incident to a criminal proceeding, does not comprise a litigation process, and is not incidental to any litigation process. *Pellegrino*, 136 F.Supp.2d at 407 (finding that a criminal complaint, likewise, is not incidental to any litigation process and does not constitute same); *see also Wyatt v. Keating*, 130 Fed. Appx. 511, 516-17 (3d Cir. 2005). Therefore, the Court finds that no process was ever initiated by these Defendants and Plaintiff's claim for abuse of process is dismissed with prejudice.

The tort of malicious use of civil proceedings is to be interpreted and applied against those who use a legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297 (3d Cir. 2003(quoting *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa. 1987)). To survive a motion to dismiss this claim, a plaintiff must sufficiently pled five elements. They are as follows:

1. The defendant has initiated, procured or continued a civil proceeding against the plaintiff;
2. The proceeding was terminated in plaintiff's favor;
3. There was an absence of probable cause to bring the proceeding;
4. The proceeding was brought for an improper purpose;
5. Plaintiff has suffered damages as a result.

42 Pa. C.S. §§8351-8354. The party seeking redress under this Act bears a heavy burden. *Higgins*, 281 F.3d at 934.

Pennsylvania statutory law defines "proceeding" to include "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term does not include an action or an appeal." 42 Pa. C.S. § 102 (2004). Similarly, Black's Law Dictionary provides that a "proceeding" is not only a complete remedy but also a mere procedural step that is part of a larger action or special proceeding. BLACK'S LAW DICTIONARY 2155 (8th ed. 2004). Black's specifies that a "judicial proceeding" is any court proceeding initiated to procure an order or decree, whether in law or equity. *Id.*; *see also Pellegrino*, 136 F.Supp.2d at 406. Within the purview of the tort of malicious use of civil proceedings, a plaintiff is required to show the institution of a civil action or legal process. *Pellegrino*, 136 F.Supp.2d at 406 (quoting 42 Pa.C.S. § 102 and *Rosen*, 627 A.2d at 191); *see also Wyatt*, 130 Fed. Appx. at 516-17 (upholding district court's decision that investigatory process of the Pennsylvania Insurance Department did not classify as "proceeding" for purposes of malicious use claim); *Schmidt v. Currie*, 470 F.Supp.2d 477, 483-84 (E.D. Pa. 2005).

In the present case, Plaintiff is attempting to impose liability on the CYS Defendants for their investigation of the abuse accusations, which led to the district attorney filing charges against him and his subsequent trial. Plaintiff does not allege that the criminal trial is the "proceeding" for which he claims relief. Rather, he specifically avers that "Defendant Suppok and Schlesinger initiated civil proceedings against the Plaintiff in the nature of a CYS investigation into the allegations made by Sara and Bobbi Brown" for purpose for which it was not intended. (Docket No. 16, ¶ 12). As a result of "the initiating the civil proceedings (i.e., the investigation) against the Plaintiff," he was charged with a crime. (*Id.* at ¶ 62).

Considering the definitions of "proceeding" and case law construing same, in this Court's estimation, the CYS Defendant's investigation into the accusations against Plaintiff is not a proceeding for purposes of the Dragonetti Act. To that end, it was not a separate "proceeding" that sought an order of court. *See Robinson v. Robinson*, 525 A.2d 367, 371 (Pa. Super. Ct. 1987). Moreover, Plaintiff has not cited authority in support of his position that the CYS Defendants instituted a civil proceeding when they embarked on their investigation. Likewise, after extensive research on the issue, this Court cannot find any authority in support of Plaintiff's argument. Accordingly, the Court grants the CYS Defendants' motion to dismiss Plaintiff's claim for wrongful use of civil process against them.

2.     Intentional Infliction of Emotional Distress

In Count VI of the Amended Complaint, Plaintiff states a claim for intentional infliction of emotional distress claim against the CYS Defendants for their alleged treatment of him, namely, that they intended to inflict emotional harm through the investigation, illegal arrest and seizure, and prosecution of Plaintiff. (Docket No. 16 at 19). Defendants Suppok and Schlesinger seek dismissal of this claim asserting that they enjoy official immunity from this intentional tort claim by virtue of the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541, *et seq.*. (Docket No. 19 at 17). They further argue that because they "have no charging function or authority," their actions throughout the investigation and prosecution of the allegations against Plaintiff could not inflict emotional distress outside of their official capacities. (*Id.* at 17-18). In response, Plaintiff argues that because he has sued these Defendants in their individual capacities, they are not immune from civil liability for this claim. (Docket No. 15 at 5).

In Pennsylvania, to state a claim for intentional infliction of emotional distress, a plaintiff must allege behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir. 1988)(quoting *Buczek v. First National Bank of Mifflintown*, 366 Pa. Super. 551, 531 A.2d 1122, 1125 (1987)). Specifically, a plaintiff must sufficiently plead that a defendant's conduct: (1) was intentional and reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe.[6] *Cox*, 861 F.2d at 395; *see also Reedy v. Evanson*, Civ. A. No. 06-1080, 2009 U.S. Dist. LEXIS 3319, at *75 (W.D. Pa. Apr. 20, 2009); and *Moeller v. Twp. of N. Strabane*, Civ. A. No. 05-1352, 2008 U.S. Dist. LEXIS 60469, at *19-20 (W.D. Pa. Aug. 1, 2008).

Under the PSTCA, a local agency employee enjoys immunity from claims of tortious action that are not encompassed within one of the eight exceptions to that liability. *See Robbins v. Cumberland County Children and Youth Services*, 802 A.2d 1239, 1252-53 (Pa.Commw.Ct. 2002)(CYS and its employees were found to be immune under the PSTCA because CYS was a local agency under the Act). However, an employee is not protected by immunity if the act "constitutes a crime, actual fraud, actual malice, or willful misconduct." *Schnupp v. Port Auth.*, 710 A.2d 1235, 1238-39 (Pa. Cmmw. Ct. 1998); 42 Pa. C.S. § 8550. "For purpose of the Tort Claims Act 'willful misconduct' is synonymous with the term intentional tort." *June v. Spano*, Civ. A. No. 05-1495, 2005 U.S. Dist. LEXIS 25681, at *4 (E.D. Pa. Oct. 27, 2005); *see also Benard v. Washington*

---

[6]

On at least one occasion, it has been held by a district court that the court is to determine "in the first instance whether the defendants' conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." *Keim v. County of Bucks*, 275 F.Supp.2d 628, 636 (E.D. Pa. 2003).

*County*, 465 F.Supp. 2d 461, 470 (W.D. Pa. 2006)(finding immunity under the PSTCA unavailable for defendant who was charged with having engaged in intentional, malicious conduct).

Here, Plaintiff has alleged that the CYS investigation led to a finding that Plaintiff was an "indicated sexual perpetrator" even though Suppok and Schlesinger knew that the allegations against him were false. (Docket No. 16 at ¶¶ 15-16). The CYS investigation further led to the seizure of two minor children from Plaintiff's home and criminal charges leading to his arrest, incarceration, and criminal trial. (*Id.* at ¶¶ 17-19). Plaintiff indicates that this behavior was intentional due to the fact that Suppok and Schlesinger knew that the sexual abuse claims against him were false. (*Id.*, passim). He claims that these actions by the CYS Defendants "were willful and deliberate and taken with reckless disregard for the rights of the Plaintiff." (Docket No. 16 at ¶ 74). Finally, Plaintiff alleges that he was subject to severe emotional distress and various physical ailments due to these actions. (Docket No. 16 at ¶ 73).

Based on these allegations and the authority discussed above, the CYS Defendants are not protected by governmental immunity with respect to the claim of intentional infliction of emotional distress, as Plaintiff has averred that their actions were willful. Thus, the Court will not dismiss the intentional infliction of emotional distress claim in Count VI based on governmental immunity at this stage of the litigation.[7]

---

[7] The Court notes that the CYS Defendants have also raised the issue of testimonial immunity (Docket No. 19 at 17), but since Plaintiff's allegations encompass much more than just alleged false testimony, testimonial immunity would not preclude a claim at this time. *See Beverly Enters. v. Trump*, 182 F.3d 183, 190 (3d Cir. 1999)(testimonial immunity applies to statements made public during a proceeding in which the individual claiming the privilege is testifying).

**IV.     Conclusion**

Based on the foregoing, the CYS Defendants' Motion to Dismiss [18] is GRANTED, in part, and DENIED, in part. It is GRANTED as to Plaintiff's claim under the Pennsylvania Constitution as contained in Count III of the Amended Complaint and as to his claims for abuse of process and wrongful use of civil process contained in Counts IV and V, respectively.  It is DENIED to the extent that the CYS Defendants seek dismissal of Counts I, II, and VI of Plaintiff's Amended Complaint. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf:   All counsel of record.