**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID O'HARA,                               )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )        Civil Action No. 08-1393
                                            )        Judge Nora Barry Fischer
JOREL HANLEY, as an individual, and         )
CRAIG MILLER, as an individual,             )
                                            )
                Defendants.                 )

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff David O'Hara ("Plaintiff") pursues this civil rights action pursuant to 42 U.S.C.

§ 1983 against Defendants Jorel Hanley ("Hanley") and Craig Miller ("Miller"). Plaintiff seeks

redress under 42 U.S.C. § 1983 for claims of unlawful arrest and malicious prosecution in

violation of his Fourth Amendment rights under the United States Constitution, and intentional

infliction of emotional distress under Pennsylvania law. (Docket No. 16). [1]

Before the Court are motions for summary judgment filed by Hanley and Miller. (Docket

No. 65). For the following reasons, the Court GRANTS the Miller motion and judgment is

---

[1]In addition, there were remaining claims against Hanley and Miller for a violation of Plaintiff's rights of equal
protection under the United States Constitution as well as a claim of a violation of his due process rights under the
Pennsylvania Constitution. These claims have been abandoned by Plaintiff. See Plaintiff's Brief in Opposition to
Defendants, Hanley and Miller's Motion for Summary Judgment. (Docket No. 78, parts C and D, pp. 12-13).

entered in his favor on all claims against him. The court GRANTS the Hanley motion, IN PART and DENIES the Hanley motion, IN PART.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background of this case has been set forth at length in this Court's Memorandum Opinion granting Summary Judgment to Yvonne Suppok. (Docket No. 110). Before the Court is a motion for summary judgment filed by Hanley and Miller. (Docket No. 65). Supporting Briefs and Concise Statements of Facts, responses and replies were also filed by all parties. (Docket Nos. 64, 66, 77, 78, 96 101, 107). Oral argument was held on September 30, 2010. Having considered the motions, supporting briefs, the factual record before this court and the parties' arguments, for the following reasons, the Court GRANTS the Miller motion and judgment is entered in his favor on all claims against him; and the Court GRANTS the Hanley motion, IN PART and DENIES the Hanley motion, IN PART.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(a) (2010)[2]. Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

---

[2] Rule 56 was amended effective December 1, 2010. The explanatory notes to the 2010 amendments explain that while the language in Rule 56 was changed from "issue" to "dispute", the "standard for granting summary judgment has not changed." Thus, the Court considers binding prior jurisprudence of the United States Supreme Court and the United States Court of Appeals for the Third Circuit in arriving at the standard to be employed in addressing the instant motions.

*McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

## IV. ANALYSIS

As previously noted, Plaintiff seeks redress under 42 U.S.C. § 1983 for claims of unlawful arrest and malicious prosecution in violation of his Fourth Amendment rights under the United States Constitution, and intentional infliction of emotional distress under Pennsylvania law. Plaintiff's principal arguments are that his arrest and prosecution were precipitated without probable cause as a result of an insufficient and/or deliberately misrepresented investigation by defendants Hanley and Miller in violation of his Constitutional rights under the Fourth Amendment and are thus actionable under § 1983. Plaintiff also claims that the actions of the defendants were outrageous and as such entitle him to damages under the state law tort of intentional infliction of emotional distress.

The defendants argue there was probable cause to believe the allegations that Plaintiff had sexually assaulted SB, and so he was lawfully arrested and prosecuted. In the alternative, defendants argue that they are entitled to qualified immunity as a complete defense to Plaintiff's claims. Defendants also argue that because Plaintiff has presented no evidence of physical harm, he is not entitled to damages under the intentional infliction of emotional distress theory of liability.

The Court first addresses Plaintiff's claim for intentional infliction of emotional distress as to both defendants and then will address the remaining claims against each defendant separately.

## 1. Intentional Infliction of Emotional Distress Claim

Plaintiff claims that he is entitled to damages for the cause of action of intentional infliction of emotional distress. Defendants assert that Plaintiff has failed to present any evidence of physical harm resulting from the emotional impact of the purportedly outrageous conduct of the defendants and that they are entitled to summary judgment on this claim for the reasons set forth at length in this Court's Memorandum Opinion granting Summary Judgment to Yvonne Suppok. (Docket No. 110).

## 2. 42 U.S.C. § 1983 and Fourth Amendment Claims

### a. Miller

At the time of the police investigation, Miller was the Sergeant supervising Hanley at the Cumberland Township Police Department. Plaintiff's claim against Miller was initially premised on the belief that Miller was "in charge" of the investigation of Plaintiff and participated in the decision to seek an arrest warrant and pursue criminal charges against Plaintiff for the alleged abuse of SB. (Docket No. 16, ¶¶ 13, 19-20). However, there is no evidence to support the

assertion that Miller did any of the investigation beyond observing the forensic interview of SB and participating in the interview of Plaintiff. Likewise, there is no evidence before this Court that Miller assisted Hanley in determining if probable cause existed, that Miller assisted in preparing the affidavit of probable cause, that Miller consulted with the District Attorney's office or sought a warrant for Plaintiff's arrest. The only possible liability on the part of Miller, if permitted, would be as Hanley's supervisor.

Recently, the Court of Appeals addressed liability in this context, stating:

In order to establish supervisory liability, [plaintiff] must show that [the supervising officer] "participated in violating [her] rights, or that he directed others to violate them, or that he, as the person in charge ..., had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190-91 (3d Cir.1995). [Plaintiff] claims that "[the supervising officer] not only supervised, ratified and approved [the arresting officer's] investigation and charging of [plaintiff], but also participated along with [the arresting officer] in the events leading up to and following [plaintiff]'s arrest." (Appellant's Opening Br. at 50.) [The supervising officer] explained in his deposition that he is generally kept abreast of how investigations are going and that he is usually notified by a detective when a decision is made to take criminal charges to an Assistant District Attorney for review. However, he does not review the charges before they go to a prosecutor. With regard to [plaintiff]'s prosecution, [the supervising officer] was [the arresting officer's] supervisor during the relevant time, and [the arresting officer] kept [the supervising officer] abreast of "significant points" (App. at 569), but there is no evidence that [the supervising officer] directed [the arresting officer] to take or not to take any particular action concerning [plaintiff] that would amount to a violation of her constitutional rights. Accordingly, we affirm the District Court's grant of summary judgment to [the supervising officer] on all of [plaintiff]'s claims.

*Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010). As in *Reedy*, there is no evidence in this case that Miller directed Hanley to take or not take any particular action concerning Plaintiff that would amount to a violation of Plaintiff's constitutional rights. Accordingly, judgment is granted in favor of Defendant Miller and Plaintiff's claims against him are dismissed, with prejudice.

### b. Hanley

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause." *U.S. Const. Amend. IV*. To establish a claim under § 1983, a plaintiff must establish the following elements: (1) the defendant acted under color of state law; (2) the defendant violated a federal constitutional or statutory right; and (3) the violation caused injury to the plaintiff. *Elmore v. Chary,* 399 F.3d 279, 281 (3d Cir.2005). Plaintiff's Fourth Amendment claim hinges on two points. First, the Court must determine if Plaintiff was "seized" as that term is defined in terms of the Fourth Amendment. If Plaintiff was not seized, there is no constitutional violation. Second, the Court must determine whether there was probable cause to charge Plaintiff with the crimes for which he was accused. If there is a finding of probable cause, there is no constitutional violation.

### 1. Seizure

Plaintiff was arraigned before the local Magistrate Judge. He was bound over for trial, but released on bond pursuant to the Judge's conditions. Here the Plaintiff was the subject of a $25,000 secured bond, the requirement that he attend all court proceedings and a requirement that he remain in the Commonwealth of Pennsylvania until the criminal proceedings were concluded. While some bond conditions were set forth in writing, Plaintiff offers evidence that he was also orally ordered to remain in the Commonwealth of Pennsylvania throughout the pendency of his criminal proceedings by the Magistrate Judge. If the evidence of the oral travel restriction is believed by the jury, Plaintiff will have been "seized" as that term is defined under Fourth Amendment jurisprudence.

> Because under the common law, the tort of malicious prosecution concerns
> perversion of proper legal procedures, [plaintiff] must show that he suffered a

seizure as a consequence of a legal proceeding. ... [Plaintiff's] post-indictment liberty was restricted in the following ways: he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania. Although it is a close question, we agree with [Plaintiff] that these restrictions amounted to a seizure.

*Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d. Cir. 1998) (internal citations and quotes omitted). Taking the evidence in a light most favorable to the Plaintiff, the Court finds that a genuine issue of disputed fact exists as to whether Plaintiff was seized. *See McGreevy*, 413 F.3d at 363.

### 2. Probable Cause

The criminal charges against Plaintiff were supported by an affidavit of probable cause authored and filed by Hanley, alone. Plaintiff alleges that the affidavit contained material misrepresentations and omissions that, if eliminated, would have disallowed a finding of probable cause for his arrest.

The affidavit, as drafted, was apparently sufficient in the eyes of the District Magistrate Judge to support the charges filed and bind Plaintiff over for trial, to set bond and to restrict Plaintiff's travel. However, this Court is not bound by a state court determination of probable cause. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 789 (3d Cir. 2000). "[T]he common law presumption raised by a magistrate's prior finding that probable cause exists does not apply in section 1983 actions." *Id*. The question of whether probable cause exists in a §1983 action is left to the jury to decide. *Id*., at 788.[3]

---

[3] Hanley argues that the sufficiency of the affidavit of probable cause was decided at the state court suppression hearing and thus Plaintiff is precluded from contesting the presence of probable cause. A Plaintiff can be estopped from challenging probable cause in a §1983 case if the doctrine of issue preclusion applies. *Doswell v. City of Pittsburgh*, 2009 WL 1734199 (W.D. Pa. June 16, 2009). In determining whether issue preclusion applies to bar a federal court from revisiting an issue previously determined in state court, a federal court must give the state court's judgment the same preclusive effect it would give the judgment by a court of that state. *James v. Heritage Valley Fed. Credit Union,* 197 Fed.Appx. 102, 105 (3d Cir.2006), *cert. denied,* 550 U.S. 939, (2007). "Under Pennsylvania law, the elements of collateral estoppel are: (1) the issue was identical to the one presented in the later action; (2)

To determine if probable cause existed at the time of the arrest in a case where a warrant was obtained pursuant to an affidavit of probable cause, the Court must examine the affidavit to determine its sufficiency. In a case, as here, where the Plaintiff alleges that the affidavit contained material misrepresentations and omissions, the Court is bound to examine the affidavit under the test prescribed in *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir. 2000). In *Wilson*, the Court of Appeals for the Third Circuit held:

> [A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest. … Rather, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.

*Id.* at 786-87 (citations and internal quotations omitted).

Plaintiff asserts that the affidavit of probable cause was drafted with material falsehoods and omissions and that these material falsehoods and omissions were instrumental to the finding of probable cause. Plaintiff further argues that Hanley drafted the affidavit in this way knowingly, or with reckless disregard for the truth. He further asserts that the sufficiency of the affidavit to establish probable cause is a question for the jury to decide. Hence, the Court must analyze the affidavit. In making its analysis, the Court is guided by *Wilson* and *Reedy*, *supra*.

---

there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action." *Id.* The principal argument asserted by Plaintiff (as Defendant in the criminal proceedings) was that SB's testimony was tainted and therefore unreliable and thus should have been excluded. (Docket No. 67, Ex. H). Judge Nalitz construed Plaintiff's argument to be that SB was not competent to testify. (Docket No. 67, Ex. H). Judge Nalitz rejected Plaintiff's argument and found that SB was competent. Accordingly, the first element of issue preclusion is not satisfied and the suppression hearing did not address the issue of probable cause.

First, the Court must decide whether the affidavit does, in fact, support a finding of probable cause when it is "corrected" as required by *Wilson*. *Id*. at 789. The importance of this analysis is eloquently set forth in *Wilson*:

> All storytelling involves an element of selectivity. We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip ("... the witness blushed when I mentioned the gun, and blinked six times while studying the photographic array. I noticed his hand crept up to his lips (which were chapped) ..."). On the other hand, one of the reasons for requiring a neutral magistrate to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead. The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.

*Id*., at 787 (internal quotation omitted).

In performing this analysis, this Court is also mindful of the following directive:

> … [W]here the probable cause determination rests on credibility conflicts … a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly.

*Merkle,* 211 F.3d at 788-789 (internal quotations and citations omitted).  In this instance however, the Court is presented with more than credibility conflicts.

While Hanley denies that he deliberately made false assertions in the affidavit of probable cause, Plaintiff offers evidence that on three occasions before the criminal trial, Hanley apologized to Plaintiff and admitted that he knew the charges against Plaintiff arose from a bitter custody dispute between SB and CJ. Although Hanley also denies he apologized to Plaintiff for filing baseless charges, if a jury were to believe Hanley did make such apologies, the jury could

find that Hanley believed the allegations to be false, yet deliberately asserted them in the affidavit of probable cause. Taking the evidence in a light most favorable to the Plaintiff, as this Court must, the Court finds that a genuine issue of disputed fact exists as to whether Hanley knew the information in the affidavit was false, deficient or deceptive. *See McGreevy*, 413 F.3d at 363. Moreover, credibility is always an issue for the jury. *See Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (quoting *Pertruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir.1993)) (on a motion for summary judgment, "[t]he court may not, [ … ] weigh the evidence or make credibility determinations" as "these tasks are left for the fact-finder.").

Even if the alleged apologies do not prove deliberate action on the part of Hanley, a jury could conclude that Hanley must have entertained serious doubts as to the truth of his statements or had obvious reason to doubt the accuracy of the information in the affidavit. *Reedy*, 615 F.3d at 213 (citing *Wilson*, 212 F.3d at 788). As the *Reedy* court stated:

> Assertions can be made with reckless disregard for the truth even if they involve minor details – recklessness is measured not by the relevance of the information but by the demonstration of willingness to affirmatively distort the truth. [O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know in making a probable cause determination.

*Reedy,* 615 F.3d at 213 (internal citations and quotes omitted). If there is evidence that the affidavit contains misstatements of fact or omissions of fact that were deliberate or in reckless disregard for the truth, the court must then determine if the misstatements or omissions are material or necessary to the probable cause determination. To make this analysis, the court must excise any misstatements and insert the facts recklessly omitted. Once done, the court determines whether the corrected affidavit establishes probable cause. *Id*. The purpose of the analysis is to

assure that a police officer is not free to disregard plainly exculpatory evidence when preparing the affidavit of probable cause. *Reedy*, 615 F.3d at 214; *Wilson*, 212 F.3d at 787.

Here, the facts in the affidavit are contradicted by evidence which was apparently available to Hanley at the time of the preparation of the affidavit of probable cause, but omitted. For example, it is alleged that Hanley was aware of the following:

- That other claims of sexual abuse were unfounded;

- That CL denied any sexual assault;

- That CYS determined the claim (made not by CL, but by SB) to be unfounded;

- That BB had a clear motive to implicate Plaintiff and others in claims of sexual assault in order to further her goal of obtaining full legal custody of SB as evidenced, in part, by her alleged threat against Kennedy when she was required to testify against BB in a custody hearing. (Docket No. 79, Ex. A, ¶ 7 (C)-(F));

- That the allegations made by SB were purportedly physically impossible for Plaintiff because the abuse was alleged to have occurred on the second floor of the dwelling where Plaintiff lived while Plaintiff was not capable of climbing stairs because of a work related injury to his knee;

- That Plaintiff admitted that in the past he had shaved the area around his testicles, but had ceased the practice three years before the accusations;

- That BB had threatened Plaintiff and his wife about interfering with the custody of SB;

- That while SB alleged Plaintiff locked the door during the abuse; there was no lock on the door to the room where the abuse purportedly occurred; and,

- That the physical examination of SB by Dr. Squires was inconclusive.

While there was inculpatory evidence, that does not excuse the failure to report exculpatory evidence. *Id*.

Secondly, the Court now must consider the contradictory evidence as if it had been initially part of the affidavit of probable cause and determine if probable cause for Plaintiff's arrest existed. As the *Reedy* court stated:

> Probable cause requires more than mere suspicion[.]However it does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Rather, probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. … In analyzing whether probable cause existed for an arrest, we must take a totality of the circumstances approach. (internal citations and quotes omitted).

*Reedy*, 615 F.3d at 211. Using this process of analysis, the Court concludes that a reasonable jury could conclude that at the time the arrest was made, the facts and circumstances within Hanley's knowledge were not sufficient for a prudent police officer to believe that Plaintiff committed the offenses charged. Simply put, the only evidence against Plaintiff was the accusation of SB which included a description of Plaintiff's genitalia that was interpreted as similar to that of a man who shaved his testicles. While the accusation of SB, and in particular the content of the forensic interview appear compelling, there is a substantial amount of contradictory evidence that was available to Hanley that was not contained in the affidavit of probable cause. Adding the facts set forth above to the affidavit of probable cause, thus correcting it as required by *Wilson*, and taking the evidence in a light most favorable to the Plaintiff, the Court finds that a genuine issue of disputed fact exists as to whether there was probable cause at the time of Plaintiff's arrest. *See McGreevy*, 413 F.3d at 363.

### 3. Qualified Immunity

The next inquiry for the Court is whether Hanley is entitled to qualified immunity.[4] Even if there was no probable cause, Hanley could be entitled to qualified immunity. The burden of establishing entitlement to qualified immunity is on Hanley. *See Harlow v. Fitzgerald,* 457 U.S. 800, 808 (1982). The *Reedy* court described the analysis as follows:

> In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established a two-part test to determine if a defendant can be shielded by qualified immunity. First, we must ask whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If, however, the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, as [if] an arrest was made without probable cause, we must ask "whether the right was clearly established ... in light of the specific context of the case...." *Id.* A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. A defendant police officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue...." *Malley,* 475 U.S. at 341, 106 S.Ct. 1092.

*Reedy*, 615 F.3d at 223-224.

"[C]rucial to the resolution of any assertion of qualified immunity is a careful examination of the record ... to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant viewed in a light most favorable to the plaintiff." *Grant v. City of Pittsburgh,* 98 F.3d 116, 122 (3d Cir.1996); *see Reedy*, 615 F.3d at 224 (quoting *Grant*).

---

4  The Supreme Court has "'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (*per curiam*)). However, our Court of Appeals has recognized that the "existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (citing *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir.1997); *Karnes v. Skrutski*, 62 F.3d 485, 499 (3d Cir.1995)).

In this case, the facts concerning Plaintiff's claim against Hanley do not support a finding that Hanley's actions meet the requirements for qualified immunity at the summary judgment stage. As the *Reedy* court stated:

> qualified immunity exists, in part, to protect police officers in situations where they are forced to make difficult, split-second decisions. *See Gilles v. Davis,* 427 F.3d 197, 207 (3d Cir.2005) ("Under qualified immunity, police officers are entitled to a certain amount of deference for decisions they make in the field [because they] must make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." (internal quotations omitted).

*Reedy*, 615 F.3d at 224, n. 37. In the present case, there were no split second decisions. The assaults allegedly took place over a 7 month period and charges were not filed until 3 months after the accusations were made. In the interim, two children, not in the legal custody of Plaintiff, were permitted to remain in his house for nearly three months after the SB accusations. Moreover, after those children were removed, other children were permitted to remain in the Plaintiff's house demonstrating that even CYS did not think that the risk of reoccurrence was sufficient to take immediate steps.

Hanley makes much of the affidavit of Assistant District Attorney Linda Chambers in his attempt to establish his entitlement to qualified immunity. Hanley argues that because ADA Chambers told him there was probable cause, he had no reason to believe otherwise. Admittedly, in her affidavit, ADA Chambers avers that she told Hanley there was probable cause. (Docket No. 67, Ex. D, ¶ 4). She goes on to say that she was not given all the facts when she met with Hanley but had she known the facts she would have come to the same conclusion. (Docket No. 67, Ex. D, ¶ 5). Unfortunately, the facts ADA Chambers averred she did not have did not include all of the facts of which Hanley was aware, but did not tell her. ADA Chambers merely says that she was unaware of other claims of sexual abuse. *Id*. ADA Chambers does not comment on the many other facts omitted from the affidavit. Nor does she comment on the impact that

information that all other claims of sexual abuse were unfounded might have had on her deliberations. Specifically, she does not comment on the effect the denial by CL of any sexual assault and the finding by CYS that the claim (made not by CL, but by SB) was determined to be unfounded would have had on her determination. Other facts of which Hanley was allegedly aware, but did not include in the affidavit were that BB had a clear motive to implicate Plaintiff and others in claims of sexual assault in order to further her goal of obtaining full legal custody of SB as evidenced, in part, by her alleged threat against Kennedy when she was required to testify against BB in a custody hearing (Docket No. 79, Ex. A, ¶ 7 (C)-(F)); that the allegations made by SB were purportedly physically impossible for Plaintiff because the abuse was alleged to have occurred on the second floor of the dwelling where Plaintiff lived while Plaintiff was not capable of climbing stairs because of a work related injury to his knee; that Plaintiff admitted he had shaved the area around his testicles in the past, but had ceased the practice three years before the accusations; that BB had threatened Plaintiff and his wife about interfering with the custody of SB; and that while SB alleged Plaintiff locked the door, there was no lock on the door to the room where the abuse purportedly occurred. Accordingly, as the record presently stands before this Court, there is no evidence that ADA Chambers would have prosecuted Plaintiff had she been aware of <u>all</u> the facts, as they may have been known by Hanley.

Once again, viewing the evidence in a light most favorable to Plaintiff, *see McGreevy*, 413 F.3d at 363, a reasonable jury could conclude that no reasonably prudent police officer would have concluded that a warrant should be issued for the arrest of Plaintiff for the charges in the underlying criminal case. Accordingly, genuine factual disputes regarding the objective reasonableness of Hanley's actions preclude a finding of qualified immunity at the summary

judgment stage. Hanley's motion for summary judgment on the § 1983 claims asserted against him is, therefore, denied.

## V.  CONCLUSION

For the reasons set forth above judgment is entered in favor of Miller and against Plaintiff on all claims against him; and summary judgment is granted in favor of Hanley on Plaintiff's state law claim of intentional infliction of emotional distress, but is denied on Plaintiff's § 1983 claim.

An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   March 15, 2011

cc/ecf:  All counsel of record.